CHARLES M. L. ASHBY, Respondent, v. ALBERT T. FANCHER, Appellant.

Fourth Department, March 22, 1919.

Contract — equity — suit to compel specific performance of alleged oral contract — evidence not justifying recovery — failure to prove fraud.

Suit in equity to compel the specific performance of an alleged executory oral contract, with an incidental accounting of dividends and profits, the complaint alleging fraud on the part of the defendant. The defendant and others secured a lease of lands within the Cattaraugus Indian Reservation for the purpose of testing the same for oil or gas, the test to be made by a corporation controlled by the defendant at an estimated expense of $15,000. In consideration thereof the corporation was to receive a one-half interest in the lands covered by the 'lease. The tests resulted in the discovery of gas, and it afterwards developed that the plaintiff held a prior record title to a lease of a portion of the lands. The plaintiff claims that the defendant made a parol agreement in consideration of a transfer of the plaintiff's lease to the defendant to give him a one-eighth interest in the properties created by the merging of the leases of the plaintiff and defendant, and the issue is as to whether a transfer of one-half of the merged leases to the defendant's corporation was by way of security for contemplated loans or was intended to vest complete title and ownership therein. Plaintiff contends that the conveyance to the corporation was intended only as security for moneys advanced.

Held, that the evidence is insufficient to establish the contention of the plaintiff or to support a judgment for him based upon the alleged parol agreement.

Held further, that the plaintiff failed to show any fraud upon the part of the defendant though, it seems, that such failure to show fraud would be insufficient to compel a reversal of judgment, for in a suit in equity the relief may be adapted to the proof irrespective of allegations of fraud which are not vital to a recovery otherwise justified.

APPEAL by the defendant, Albert T. Fancher, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 24th day of September, 1917, upon the decision of the court after a trial at the Erie Equity Term.

Carey D. Davie [Henry P. Nevins with him on the brief], for the appellant.

George C. Riley [Henry W. Killeen and Simon Fleischmann with him on the brief], for the respondent.

LAMBERT, J.:

This action is equitable in form. It seeks specific performance of an executory oral contract entered into by the parties in October, 1910, together with the incidental accounting of the dividends and profits. The complaint charges fraud as a basis for the relief sought. The facts are, briefly, as follows:

In and prior to 1907 the plaintiff acquired from the Seneca Nation of Indians and from individual Indians grants of certain mineral rights on about 6,000 acres of land upon the Cattaraugus Indian Reservation. Prior to the making of the oral agreement mentioned the grant, hereinafter referred to as the lease, had been formally approved by the Congress of the United States.* It expressly excluded coal and oil products, and it is at least questionable whether it granted any gas rights. It is established by undisputed evidence that in the summer of 1910 the defendant and the witnesses Bolard and Gardner conceived the idea of securing a lease of the entire Indian reservation for the purpose of testing the same for oil or gas. The necessary consent of the Indian government of the reservation was secured and a formal lease executed. It covered about 25,000 acres. For convenience the lease was made to the witness Bolard, to be held by him for the benefit of the parties interested. It was provided by the terms of the lease thus made that drilling should be commenced within a limited period. For the purpose of fulfilling the terms of the lease it was definitely agreed between the defendant and his associates that three wells should be drilled immediately. It was believed and so agreed by them that three wells would test the territory embraced in the lease secured. It was also agreed that a corporation owned and controlled by the defendant Fancher, called the Finance Oil Company, would pay the expenses of drilling the three wells, estimated at $15,000. In consideration of such payment by the Finance Oil Company, for such development, there should be assigned to it, as owner, a one-half interest in the property rights in the so-called Bolard lease. In pursuance of such agreement, drilling was commenced in September, 1910, and continued

---

* See 35 U. S. Stat. at Large, 445, chap. 216, § 4. See, also, 36 id. 927, chap. 143.— [REP.

until the three wells were drilled, at a cost paid by the Finance Oil Company of approximately $15,000. In performance of the agreement made with and in behalf of the Finance Oil Company and while the lease was standing in the name of Bolard, he, on the 1st day of December, 1910, assigned to or for its benefit a one-half interest in the so-called Bolard lease.

It was further expressly agreed by the interested parties that in the event that the test to be made should disclose the presence of oil or gas of commercial value, then the Finance Oil Company would advance moneys to meet the expenses of drilling wells and developing the property until such time as the avails from the sale of the oil or gas should repay the moneys so advanced as loans.

Gas was discovered by the test made and drilling continued at a cost and expense of upwards of $60,000, which was paid by the Finance Oil Company. This was paid in pursuance of the agreement recited. During the process of the drilling of the three test wells it was discovered by the defendant that the plaintiff held the record title of a lease of some character on some portion of the reservation. In October, 1910, the plaintiff and the defendant met in the city of Buffalo and made a parol agreement, which is the subject of this action. An arrangement was made for the transfer of the plaintiff's lease to the defendant, or his nominee. The evident purpose of the arrangement was to merge the two interests and thereby avoid possible conflicting rights. The terms of the oral contract negotiated by the parties did not involve the payment of any money by the plaintiff for the development of the leased territory. The parties agreed that the necessary funds for drilling and operating the property should be provided through the efforts of the defendant. The exact terms agreed upon under which the defendant should furnish the required finances is the principal issue of fact in this case. It is to that issue that about all of the disputing evidence is directed. The plaintiff in support of his case testifies specifically that under the agreement made with the defendant in October, 1910, he was to have for his lease one-eighth of the property created by the merging of the Bolard lease and the one owned by himself. The defendant disputes the claim thus made by the

plaintiff. He testifies that he informed the plaintiff that the Finance Oil Company, a corporation controlled by him, was to advance $15,000 to meet the expenses of drilling three wells, and as a consideration for the chances so taken one-half of the merged leases were to be assigned to it as owner, and that for such consideration the Finance Oil Company would pay for drilling the three wells, and in case oil or gas was found of commercial value it would advance and loan moneys necessary to meet the expenses of drilling, until such times as the avails of the sales would pay such indebtedness and any expenses incurred in further drilling and developing.

It is thus seen that the issue of fact is narrow. It is in the final analysis whether the transfer of half of the merged leases to the Finance Oil Company was by way of security for contemplated loans or was intended to vest complete title and ownership therein. The plaintiff insisted upon the trial and here that the conveyance to the Finance Oil Company was intended only as security for moneys advanced. The defendant then and now contends that the transfer was absolute and was so intended.

The findings of the trial court support the contentions of the plaintiff and judgment has been rendered accordingly. Upon this appeal the defendant urges that the findings upon which the judgment rests are not supported by requisite proof. In this contention we agree. The burden was upon the plaintiff to establish his case by the greater weight of evidence. The only support corroborative of his evidence is found in the testimony of the witness Graham. It was claimed by him that he was present at the time of the negotiations in October, 1910, between the parties. Before attempting a narration of the occurrences he stated, " I cannot tell you the exact words." He then, in an attempt to give the substance, stated that the defendant, after a few remarks, said, " He came in to see about the reservation, and that they were going to drill up there, providing Mr. Ashby would agree, and if he did, he was to receive one-eighth of the proposition. He said that there was no company formed yet, but he was going to put down three test wells, and if it came out all right, he would form a company and take care of Mr. Ashby's end, until such time as the gas would pay and he would be reimbursed in that way."

He further stated that he did not hear any conversation with respect to the Bolard lease, or that there had been any assignment made of it; that nothing was said with respect to the assignment of any lease. This comprises the substance of any evidence material to the issue that the witness stated he could remember. It could be readily doubted that the witness was present upon the occasion in question. Conceding that he was, the evidence he gives most completely fails in corroboration of the plaintiff upon the disputed issue. The evidence of the plaintiff and of the witness Graham constitutes the proof relied upon by the trial court upon which to base its findings.

The defendant, as before stated, disputes the evidence of the plaintiff upon the material issue in the case. Some two months before these negotiations, the parties interested in the Bolard lease had agreed to assign one-half interest in it to the Finance Oil Company, in consideration of its taking the chance of losing $15,000 in drilling the test wells. Under these circumstances, assuming the defendant to be free from a fraudulent purpose, it is quite probable that he stated to the plaintiff, as he now claims, that the assignment of the merged leases to be made to the Finance Oil Company should vest the title in it. That was precisely his agreement with his associates. Subsequently and in February, 1912, in execution of the parol agreement, the plaintiff executed an unconditional transfer of half of his lease to the Finance Oil Company and the remaining half to the Reservation Gas Company. The form of the assignment executed by the plaintiff and delivered to the defendant squares exactly with the claim made by the defendant before the trial court and here. This record justifies the inference that the plaintiff was not a novice in the business world. He was a promoter. It is his claim that at the time of the execution and delivery of the assignment in February, 1912, there was delivered to him as a consideration therefor 125 shares of stock in the Reservation Gas Company. He then knew that half of his lease had been assigned to the Finance Oil Company and that he only received stock in the Reservation Gas Company. Upon the certificate of stock delivered to him there was a notation in ink, in the writing of the defendant, " 50% paid." In explanation of the absolute

Fourth Department, March, 1919. [Vol. 187.

assignment of his lease to the Finance Oil Company he stated that at that time he made inquiry of the defendant as to the meaning of the notation and that he was informed by the defendant that the notation was made to indicate that the stock was only fifty per cent paid and would so remain until finances were realized from the sale of gas to pay the moneys advanced by the Finance Oil Company and then a reassignment would be made by the Finance Oil Company to the Reservation Gas Company. If this version of the interview is true, it gives substantial support to the claim made by the plaintiff respecting the terms of the contract under consideration.

The contrary is quite conclusively shown by the written statements made by both the plaintiff and the defendant. It appears in the record that some time prior to June, 1915, the plaintiff had pledged his stock as security for a loan with a Mr. Case, a banker of Franklinville, N. Y. Inquiry apparently was made by the banker respecting the meaning of the notation on the stock, " 50%." It is clear from the plaintiff's letter to his banker that his only claim in regard to the notation on the stock was that he had made full payment for the same. He so wrote his banker. On the same day by letter he requested the defendant to acquaint the banker with the fact that he had made full payment for his stock. The defendant upon such request and that of the banker, wrote in part as follows: " It was marked ' 50% paid ' in lieu of the property. The said company own ½ of the gas [and] oil rights on the Cattaraugus Reservation and the Finance Oil Company, ½."

The written statement of the plaintiff is in material variance with his statement as a witness. The statement made by the defendant in his letter is precisely what he testified to upon the trial respecting the transfer made of the merged leases to the Finance Oil Company. So far as this record discloses, there is not a scratch of writing or resolution of any of the corporations that supports the plaintiff's version of the parol contract of 1910. We can well assume that at the time he wrote the letter referred to he was interested in making the value of his stock appear to his best advantage. He did not then declare that it would be fully paid when the reassignment was made and the value of his stock thereby enhanced. He was interested only in the assertion that he ·

had fully paid for the stock he then owned and had pledged to his banker. It is quite apparent to our minds that the version of fact that he now gives is an afterthought. The defendant gave quite a different account of the interview had with the plaintiff at the time of the delivery of the stock to him. He testified that upon his attention being called by the plaintiff to the notation upon the stock certificate he stated that the venture was highly speculative and that he did not desire that stock in a company controlled by him, prior to the development of its value, should reach the hands of innocent purchasers; that he made the notation for the purpose of retarding the transfers of the stock of the corporation. It is established and found by the trial court that a like notation was placed upon all of the stock issued by the Reservation Gas Company. It is thus apparent that the written declarations of the parties furnished quite conclusive evidence corroborating the defendant's contention respecting the contract sought to be reformed.

There are other cogent circumstances that dispute the claim made by the plaintiff upon the trial and here. He was a stockholder of the Reservation Gas Company. He attended every annual meeting that that corporation held up to and including the meeting in January, 1916. It is undisputed that at the annual meetings of the stockholders of the Reservation Gas Company a full report was made of the earnings of the gas company and of its disbursements. The records of the corporation disclose that after the money advanced by the Finance Oil Company had been fully repaid it received as owner half of the earnings of the enterprise. These reports were made in the presence of and at meetings in which the plaintiff participated. He received dividends declared and paid by the Cattaraugus Gas Company at various times during the years 1914 and 1915. He did not complain that fifty per cent of the dividends of the gas company was being paid to the Finance Oil Company during this same period as a stockholder. These potent and evidential circumstances above recounted, together with the evidence introduced by the defendant, so satisfactorily refute the evidence introduced by the plaintiff as to leave this case destitute of proof essential to sustain the judgment rendered.

It is next urged by the defendant upon this appeal that because of the failure to prove the fraud or fraudulent representations charged as an inducement to the plaintiff to enter into the contract in dispute, the reversal of the judgment rendered should follow. This position is not sound in law. This being an equitable action, the relief may be adapted to the proof, irrespective of the allegations of fraud. In other words, failure to prove fraud and deceit is not necessarily vital to a recovery, otherwise justified. (*Bloomquist* v. *Farson,* 222 N. Y. 375.)

The trial court has founded a judgment for the plaintiff, requiring a reformation and accounting upon the ground of mistake and failure of recollection, as to details, by the defendant. We find an express finding of fact in the record that the charge that the defendant practiced a fraud upon the plaintiff is not sustained. There is a finding to the contrary. The predication of the judgment upon the finding that the defendant, through mistake or failure of recollection, delivered to the plaintiff stock representing one-sixteenth, in lieu of one-eighth of the stock of the two corporations, is without any evidence to support it. Events subsequent to the making of the oral contract are too replete with circumstances calling the direct attention to that phase of the agreement to permit of the conclusion that the defendant did or could forget so vital a portion of the agreement. The subsequent transactions continually directed his attention to the details of the arrangement. It was sharply involved in the issuance of the stock. It was up again when the defendant wrote to the plaintiff's banker in 1915. It was continually present in connection with the distribution of dividends and the payment of the debts of the Reservation Gas Company. The trial court has found that all these events occurred and that the defendant was present at every annual meeting except one and took part in the transaction of the business of the corporation. The trial court has gone further and found that the defendant dominated these corporations and their stockholders. It seems impossible that under such circumstances the defendant could be exonerated from the charge of fraud, if the plaintiff's contention be true. The two positions are not reconcilable. Either the defendant did not make the agree-

ment found, or if he did make it, he was guilty of most gross fraud. Absolved as he is by the trial court of the charge of fraud, we are forced to the conclusion that upon the merits of the case the plaintiff has failed to prove facts entitling him to the equitable relief which has been granted. The record in this case is voluminous and indicates that every item of proof procurable was presented upon the trial. We have examined these facts with great care and conclude that this is a proper case for the exercise of the power vested in this court by section 1317 of the Code of Civil Procedure.

Findings should be reversed and new findings made consistent with this opinion and judgment should be rendered by this court dismissing the plaintiff's complaint, with costs in the court below and upon this appeal.

All concurred.

Judgment reversed, with costs, and complaint dismissed, with costs. The findings of fact contained in the decision and numbered 6, 8, 9, 10, 14, 15, 19, 20, 21, 22, 24, 25 and 29, and the conclusions of law numbered 1 and 2, (a), (b) and (c) are disapproved and stricken out, and in place thereof this court finds, from the evidence contained in the record, the findings of fact as requested by the defendant, numbered 26, 27, 32, 33, 34, 36, 37, 39, 45, 46, 47, and the conclusions of law numbered 1st and 2d.